**No. 13-5245**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**AMADOR COUNTY, CALIFORNIA,**
*Plaintiff-Appellee,*

**BUENA VISTA RANCHERIA OF THE ME-WUK INDIANS,**
*Movant-Appellant,*

*v.*

**UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,**
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:05-CV-00658 Barbara J. Rothstein
United States District Judge

_____

**OPENING BRIEF OF MOVANT-APPELLANT
BUENA VISTA RANCHERIA OF ME-WUK INDIANS**

_____

PADRAIC I. MCCOY
Tilden McCoy + Dilweg LLP
2500 30th Street, Suite 207
Boulder, Colorado 80301
(303) 323-1922
pmccoy@tildenmccoy.com
(D.C. bar # 53307)

January 31, 2014

[ORAL ARGUMENT NOT YET SCHEDULED]

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Undersigned counsel certifies as follows:

**A.    Parties and Amici**

The parties appearing before the District Court in this matter are Plaintiff Amador County, California; Defendants the United States Department of the Interior; Gale A. Norton, Dirk A. Kempthorne, Kenneth Lee Salazar, and Sally Jewell, Secretaries of the Interior; Defendant Michael D. Olsen, Acting Principal Deputy Assistant Secretary for Indian Affairs; Larry Echo Hawk and Kevin Washburn, Assistant Secretaries for Indian Affairs.  The Buena Vista Rancheria of Me-Wuk Indians is a non-party below, having moved to intervene pursuant to Fed. R. Civ. P. 24.  The parties to this appeal are Plaintiff-Appellee Amador County, California; Defendants-Appellees the United States Department of the Interior, Secretary of the Interior Sally Jewell, and Assistant Secretary for Indian Affairs Kevin Washburn; and Movant-Appellant Buena Vista Rancheria of Me-Wuk Indians.

**B.    Rulings Under Review**

The ruling at issue in this appeal is the June 4, 2013 Memorandum Opinion and Order of the District Court, United States District Judge Barbara J. Rothstein,

i

in case number 05-658.  This ruling can be found in the Joint Appendix at pages

JA 291-300.

### C.    Related Cases

The case on review was previously before this Court in the matter of

*Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011), No. 10-5240, decided

May 6, 2011.  A related case was recently decided by the Ninth Circuit in an

unpublished decision in the matter of *Friends of Amador County v. Salazar*, 2014

U.S. App. LEXIS 1802 (9th Cir. 2014), No. 11-17996, filed January 29, 2014.

### D.    Certificate Pursuant to Circuit Rule 26.1

The Buena Vista Rancheria of Me-Wuk Indians is a federally-recognized

Indian tribe located within the State of California.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF CONTENTS...........................................................................iii

TABLE OF AUTHORITIES ....................................................................vi

GLOSSARY OF ABBREVIATIONS ..........................................................x

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES .......................................................................2

RELEVANT RULES ................................................................................3

STATEMENT OF FACTS

    FACTUAL BACKGROUND ...............................................................6

    PROCEDURAL BACKGROUND.....................................................11

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT .........................................................................................18

    I.    STANDARD OF REVIEW .....................................................18

    II.    INTRODUCTION ..................................................................18

    III.    THE DISTRICT COURT ABUSED ITS DISCRETION IN ITS
          EVALUATION OF THE ELASPED TIME FACTOR
          AND BY FAILING TO CONSIDER ALL OF THE RULE 24
          TIMELINESS FACTORS ........................................................20

          A.  The District Court Abused Its Discretion as to the Elapsed Time
              Factor by Failing to Acknowledge that Events in 2011 Prompted
              the Request and that the Motion to Intervene Was Distinct from
              the Tribe's Earlier Amicus Request ....................................21

1.  The District Court Failed to Acknowledge that Events in 2011 Effected a Significant Change on the Possible Impairment of The Tribe's Interests ....................................................................26

2.  The District Court Improperly Decided the Tribe's 2011 Intervention Request on the Facts and Arguments of the Tribe's 2005 Amicus Request ...............................................................29

B.  The Tribe's Purpose in Seeking Intervention was Affirmed but then Disregarded ......................................................................31

1.  The Decision's Proffered Analysis Significantly Undervalues The Weight that Should have been Accorded to the Tribe's Purpose For Intervention...............................................................31

2.   The Decision Below Diminishes the Tribe's Purpose for Intervention Merely Based on Its Non-Party Status .....................35

C.  The Tribe had Significant Need for Intervention as a Means of Preserving Its Rights ...........................................................37

D.  In Light of This Court's Recent Clarification to the "Timeliness" Requirement, the Tribe's Intervention to Raise Rule 19 Will Not Unduly Disrupt the Litigation to the Unfair Detriment of the Parties ...........................................................................38

IV.  THIS COURT CAN AND SHOULD DETERMINE THAT THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE TRIBE'S UNIQUE INTERESTS HERE....................................................43

A.  This Court May Determine Lack of Adequate Representation in the First Instance ....................................................................43

B.  The *Trbovich* Standard Teaches that the Burden for Showing Inadequate Representation is Minimal................................................44

C.  The Federal Trust Responsibility Has Not Been Held to Create a Duty to Represent the Specific Interests of a Tribe in the Context Litigation ............................................................................45

iv

D.   As the United States Failed to Move to Dismiss for Rule 19, Its Inadequate Representation on that Point Alone is Unassailable.........46

E.   The United States' Actions in this Litigation and Regarding this Tribe Satisfy the Minimal Threshold that the Government "May" Not Adequately Represent the Tribe's Various Government and Gaming Interests...................................................................................48

V.   CONCLUSION...........................................................................................51

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION .....53

CERTIFICATE OF SERVICE ...............................................................................54

# TABLE OF AUTHORITIES

## Cases

*Acree v. Republic of Iraq*, 370 F.3d 41 (D.C. Cir. 2004) ................................32, 43

*Alto v. Black*, 2013 U.S. App. LEXIS 25684, 33-34
 (9th Cir. Cal. Dec. 26, 2013)...................................................................................33

*Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011) ........................ ii, 12, 40

*Brown v. Secretary of the Army*, 78 F.3d 645 (D.C. Cir. 1996) .......................33, 36

*Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207
 (D.C. Cir. 1997) ......................................................................................................36

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987)....................9

*City of Bangor v. Citizens Communs. Co.*, 532 F.3d 70 (1st Cir. Me. 2008) ..........24

*Creusere v. Bd. of Educ.*, 88 F. App'x. 813 (6th Cir. 2003)....................................22

*Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986)...............43, 44, 47

*Flying J, Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. Wis. 2009) ...........................24

*Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) .................................................44

*Friends of Amador County et al. v. Kenneth Salazar et al.*, No. Civ. 2:10-348
   WBS, 2011 WL 4069473 (E.D. Cal. Oct. 18, 2010)......................................13, 14

*Friends of Amador County et al. v. Kenneth Salazar et al.*, No. Civ. 2:10-348
   WBS, 2011 WL 4709883 (E.D. Cal. Oct. 4, 2011)..................................13, 14, 28

*Friends of Amador County v. Salazar*, No. 11-17996, 2014 U.S. App. LEXIS 1802
   (9th Cir. January 29, 2014)........................................................................ ii, 14, 49

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728
   (D.C. Cir. 2003) ...................................................................1, 18, 19, 44, 45, 47

*Authorities upon which we chiefly rely are marked with asterisks.

*Gila River Indian Cmty. v. United States*, 776 F.Supp.2d 977 (D. Ariz. 2011) ........9

*Hardin v. Jackson*, 600 F. Supp. 2d 13 (D.D.C. 2009).......................................40, 47

\*_Hodgson v. United Mine Workers_, 473 F.2d 118 (D.C. Cir. 1972).....21, 23, 38, 42

*Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995) ....................37

*Kickapoo Tribe of Oklahoma v. Lujan*, 728 F. Supp. 791 (D.D.C. 1990)...............47

*Klamath Tribe Claims Comm. v. United States*, 106 Fed. Cl. 87 (Fed. Cl. 2012) ..32

*Maine v. Director, United States Fish & Wildlife Serv.,* 262 F.3d 13
 (1st Cir. 2001) ...................................................................................................25

*MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377
 (2d Cir. 2006)...................................................................................................34

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ..............18, 20, 35

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361
 (3d Cir. 1995)..........................................................................................19, 25, 39

*National Wildlife Fed'n v. Andrus,* 642 F.2d 589 (D.C.Cir.1980) ........................45

*Natural Res. Def. Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977) .....................42

*Philippines v. Pimentel*, 553 U.S. 851 (2008) ...................................................32, 34

*Republic of Iraq v. Beaty*, 556 U.S. 848 (2009)......................................................32

\*_Roane v. Leonhart_, No. 12-5020, 2014 WL 259659
 (D.C. Cir. Jan. 24, 2014) ......................................................... 18, 21, 25, 26, 38, 39

*Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140 (D.D.C. 2002)
 *aff'd*, 333 F.3d 228 (D.C. Cir. 2003) ...................................................................24

*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. Cal. 1992) ...........................48

*Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C.Cir.1995).........................45

*Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001) ............................................18, 40

*Tillie Hardwick v. United States*, No. C79-1710-SW (N.D. Cal. 1983)...................7

*Timbisha Shoshone Tribe v. United States DOI*, 290 F.R.D. 589 (E.D. Cal. 2013)51

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)...................................44, 47

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (U.S. 1977)...............................23

*United Keetoowah Band of Cherokee Indians of Okla. v. United States*,
  480 F.3d 1318 (Fed. Cir. 2007)...............................................................36

*United States v. American Tel. & Tel. Co.*, 461 F. Supp. 1314 (D.D.C. 1978).......36

\**United States v. American Tel. & Tel. Co.*, 642 F.2d 1285
  (D.C. Cir. 1980) ...........................................................19, 21, 23, 32, 44

*United States v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235
  (D.C. Cir. 2006) ...........................................................................21, 32

*United States v. Carpenter*, 298 F.3d 1122 (9th Cir. Nev. 2002)...........................24

*Utahns for Better Transp. v. United States DOT*, 295 F.3d 1111
  (10th Cir. 2002)...........................................................................30, 31

*Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008)...............................................36

*Vann v. Salazar*, 883 F. Supp. 2d 44 (D.D.C. Sept. 30, 2011) ...............................47

**Statutes**

18 U.S.C. § 1151 ...........................................................................................11

Indian Reorganization Act, 25 U.S.C. § 476 *et seq.*.............................................7, 9

Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*............................1, 6, 9, 11

28 U.S.C. § 1291 .............................................................................................1

## Rules

Fed. R. Civ P. 12(b)(1) ................................................................12

Fed. R. Civ. P. 12(b)(6) ...............................................................12

Fed. R. Civ. P. 12(b)(7) ...........................................................12, 42

Fed. R. Civ. P. 12(h)(2) ...............................................................36

*Fed. R. Civ. P. 19 .............................. 1, 3, 12, 16, 18, 31, 32, 34-37, 42, 48, 49, 51

*Fed. R. Civ. P. 24 ............................................ 4, 15, 18, 31, 35, 36, 43, 44, 47, 49

## Other Authorities

Indian Entities Recognized and Eligible to Receive Services from
  the United States Bureau of Indian Affairs, 50 Fed. Reg. 6,055
  (Feb. 13, 1985) ....................................................................8

Indian Entities Recognized and Eligible to Receive Services from
  the United States Bureau of Indian Affairs, 79 Fed. Reg. 4,748
  (Jan. 29, 2014) .................................................................6, 8

Juliano, Ann C. "Conflicted Justice: The Department of Justice's
  Conflict of Interest in Representing Native American Tribes,"
  37 *Ga. Law. Rev*. 1307 (2003) .................................................46

Moore's Federal Practice and Procedure § 1916 (3d ed. 2007) .............................34

7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
  736 § 1909 (1st ed.1972) .......................................................44

7C Charles Alan Wright et al., Federal Practice and Procedure § 1916
  (3d ed. 2007) ...............................................................19, 21

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Buena Vista Rancheria | That certain 67.5 acre parcel of land located in Amador County, California and occupied by the Tribe, as more fully described and discussed herein |
| County | Amador County, California |
| Department of Interior | United States Department of Interior |
| *Friends of Amador County* | The similar case of *Friends of Amador County et al. v. Kenneth Salazar et al*., No. Civ. 2:10-348 WBS, 2011 WL 4709883 (E.D. Cal. Oct. 4, 2011), *aff'd* No. 11-17996, 2014 U.S. App. LEXIS 1802 (9th Cir. January 29, 2014) |
| Hardwick Litigation | *Hardwick v. United States*, No. C-79-1710 SW (N.D. Ca. filed 1979) |
| IGRA | Indian Gaming Regulatory Act |
| NIGC | National Indian Gaming Commission |
| Rule 19 | Fed. R. Civ. P. 19 |
| Rule 24 | Fed. R. Civ. P. 24 |
| Tribe | The Buena Vista Rancheria of Me-Wuk Indians |

# JURISDICTIONAL STATEMENT

A.     The District Court's jurisdiction has not been finally determined; however, Plaintiff Amador County, California brings claims against the United States Department of the Interior ("DOI"), DOI Secretary Sally Jewell, and Assistant Secretary for Indian Affairs Kevin Washburn, challenging under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, the Assistant Secretary's approval of an amendment to a gaming compact between the Tribe and the State of California.

B.     This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as the Tribe timely filed its notice of appeal on August 2, 2013, within 60 days of the District Court's Order denying the Tribe's request to intervene for the limited purpose of raising Fed. R. Civ. P. 19.

C.     The District Court's order was entered on June 4, 2013.  The Tribe filed timely its Notice of Appeal on August 2, 2013. F.R.A.P. 4(a)(1)(B).

D.     This appeal is of the denial of a motion for intervention as of right, and thus is an appeal of a final order.  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003) ("The denial of a motion for intervention as of right is an appealable final order.").

## STATEMENT OF ISSUES

1.      Whether the District Court abused its discretion under Rule 24(a) when it denied the Tribe's motion to intervene for purposes of raising highly tenable Rule 19 joinder defects and to request dismissal, and gave dispositive weight to a single factor (elapsed time) under a legal test that required consideration of the totality of the circumstances, especially including three other factors (two of which the court acknowledged as satisfied)?

2.      Whether the District Court abused its discretion by failing to acknowledge that events in 2011 demonstrated that the United States no longer adequately represented the Tribe's interests and thus the Tribe's request for intervention was timely, and further that the Tribe had met all of the requirements for intervention?

# RELEVANT RULES

## FED. R. CIV. P. 19. REQUIRED JOINDER OF PARTIES

(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) WHEN JOINDER IS NOT FEASIBLE. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) PLEADING THE REASONS FOR NONJOINDER. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2) the reasons for not joining that person.

(d) EXCEPTION FOR CLASS ACTIONS. This rule is subject to Rule 23.

## FED. R. CIV. P. 24. INTERVENTION

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

4

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) NOTICE AND PLEADING REQUIRED. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## STATEMENT OF FACTS

**FACTUAL BACKGROUND**

The Tribe is a federally-recognized Indian tribe, listed as such on the government's formal list of Indian tribes. *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 79 Fed. Reg. 4,748 (Jan. 29, 2014). It occupies a small, 67-acre Indian reservation known as the Buena Vista Rancheria, which is located in Amador County, California (the "Rancheria"). In 2005, the United States Department of the Interior, through the National Indian Gaming Commission ("NIGC"), Office of General Counsel, determined, in a decision in which the Department of the Interior, Office of the Solicitor concurred, that the entire Rancheria is an "Indian reservation" under federal law and, for that reason, constitutes gaming-eligible "Indian lands" under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* ("IGRA"), which do not need to be placed into trust to support Indian gaming. See NIGC Indian Lands Opinion, June 30, 2005 ("NIGC Opinion"), available at NIGC website, http://www.nigc.gov/Reading_Room/Indian_Land_Opinions.aspx.

As the NIGC Opinion explains, since prior to 1900, Me-Wuk Indians have lived on a piece of land in rural Amador County they called Buena Vista. Pursuant to federal appropriation acts permitting the purchase of land for Indian reservations in California, the United States purchased this land in 1927 and held it for the

6

benefit of Me-Wuk Indians.  In 1935, the Me-Wuks—then known as the Buena

Vista Rancheria of Me-Wuk Indians of California—voted to accept the terms of

the Indian Reorganization Act, 25 U.S.C. § 476 et seq.  As a result, as of 1935, the

Buena Vista Rancheria's status as a federally-recognized Indian tribe was

confirmed.

The United States terminated the Buena Vista Rancheria and numerous other

California tribes in the late 1950s pursuant to the California Indian Rancheria Act

of 1958 (the "Termination Act").  Under that Act, the Tribe's government-to-

government relationship with the United States was severed, and the Tribe and its

members were no longer eligible for the services that the United States provides to

Indian tribes and their members.  The 67-acre parcel that makes up the Rancheria

was converted from trust to fee lands and, pursuant to a 1961 plan of distribution,

conveyed to the two then-occupants of the Rancheria and Tribal members, Louie

and Annie Oliver (the current Tribal Chairwoman's great-grandparents).

In 1979, the Buena Vista Me-Wuk Indians and several other terminated

California Indians brought suit against the United States in the Northern District of

California challenging the termination of the Indian rancherias affected by the

Termination Act on the grounds that the Secretary failed to fulfill conditions

precedent set forth in the Termination Act.  *Tillie Hardwick v. United States*, No.

C79-1710-SW (N.D. Cal. 1983).  In 1983, the Buena Vista Tribe and the United

States negotiated a settlement to the litigation that the U.S. District Court entered as a stipulated judgment (the "1983 Hardwick Stipulation," JA[1] 153-166). The 1983 Stipulation expressly restored the Tribe's status as a federally-recognized Indian tribe and expressly restored the Tribal members to acknowledgement as Indians under federal law. As a result of its restoration, the "Buena Vista Rancheria of Me-Wuk Indians of California" was added to the government's formal list of Indian tribes. *See Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 50 Fed. Reg. 6,055 (Feb. 13, 1985). The Tribe remains on the list today. *See id.* at 79 Fed. Reg. 4748 (Jan. 29, 2014).

The 1983 Stipulation expressly held in abeyance the matter of the Rancheria boundaries' restoration, a matter about which the court reserved jurisdiction to address later. In 1987, the Buena Vista Rancheria and the Plaintiff here, Amador County (the tax collector, County Assessor and Board of Supervisors), entered into a second Hardwick stipulation (the "1987 Hardwick Stipulation") which ordered the original boundaries of the Buena Vista Rancheria restored and required Amador County and the United States to treat the Rancheria "as any other federally recognized Indian Reservation."

---

[1] Citations to the Joint Appendix will be abbreviated as "JA [page number]."

After the United States Supreme Court confirmed, as an incident of tribal jurisdiction, the right of Indian tribes to engage in gaming on their lands free of state jurisdiction, *see California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), Congress in 1988 enacted IGRA to provide a regulatory structure for Indian gaming and to promote tribal economic development, self-sufficiency and self-government. 25 U.S.C. § 2702. Under IGRA, class III (high-stakes or slot-style) gaming may only be conducted by a tribe that has entered into a tribal-state gaming compact that has been approved by the Secretary. 25 U.S.C. § 2710(d)(1).

Further, IGRA provides that tribal gaming is limited to "Indian lands," which the statute defines as "all lands" (i.e., fee or trust) within the limits of "any Indian reservation," as well as all Indian trust and restricted fee lands wherever located. 25 U.S.C. § 2703(4). Importantly, although tribes may request or the government may issue such determinations for various reasons, IGRA nowhere expressly requires a government "Indian lands" determination. *Gila River Indian Cmty. v. United States*, 776 F.Supp.2d 977, 992 (D. Ariz. 2011) ("A gaming determination under IGRA is not one of the specified requirements in the Act.").

On June 30, 2005, the NIGC issued an IGRA Indian lands determination. The NIGC Opinion reviewed the history of the Buena Vista Rancheria, the Termination Act, and the 1983 and 1987 Hardwick Stipulations. It concluded that the gaming site falls within the limits of an Indian reservation and therefore "meets

9

the definition of Indian lands under IGRA."  The Department of the Interior, Office of the Solicitor, concurred in the determination.

The Tribe is still working to overcome the effects of its wrongful termination.  It has decided to pursue its right to conduct tribal government gaming pursuant to IGRA in order to achieve economic self-sufficiency, to raise revenues to support tribal government programs, and to promote the health, welfare, and education of its members.  In order to further these goals, the Tribe entered into a gaming compact with the State of California in 1999, which the Secretary approved on May 15, 2000.  *Notice of Approved Tribal-State Compacts*, 65 Fed. Reg. 31,189 (May 16, 2000) (the "Compact").  Notably, the County did not object to the State's entering into the 1999 Compact with the Tribe, and they have never challenged the Secretary's approval of that Compact.  In August of 2004, the Tribe and the State entered into an amendment to the Compact, which was submitted to the Secretary as required by IGRA and which was deemed approved.  *Notice of Approved Tribal-State Class III Gaming Compact*, 69 Fed. Reg. 76,004 (Dec. 20, 2004) (the "Compact Amendment").  Rather than amending the agreement in its entirety, the Compact Amendment documents the modification of particular Compact provisions.

Here, Plaintiff seeks to invalidate the Compact Amendment and, by implication, the 1987 Hardwick Stipulation that expressly restored the Rancheria

10

and to which the Tribe, County, and United States have agreed to be bound.  The suit also challenges several other of the Tribe's fundamental and legally protected interests, including the Rancheria' status as Indian country pursuant to 18 U.S.C. § 1151, as an Indian "reservation" under federal law, and as "Indian lands" as IGRA defines that term, in addition to the Tribe's gaming rights, the Tribe's gaming revenues, the Tribe's ability to assert governmental authority over its reservation, and the Tribe's ability to enforce its laws (i.e., the Compact) there.

**PROCEDURAL BACKGROUND**

Plaintiff Amador County, California ("Plaintiff") filed this action on April 1, 2005, seeking to prevent the Tribe from developing a casino on the Tribe's Indian reservation by attacking the federal government's approval of a contract to which only the Tribe and State of California are parties.  Complaint, JA 8-19.  The County further sought to attack the status of the reservation under federal law and its qualification as Indian lands under the Indian Gaming Regulatory Act ("IGRA").  *Id*.  The Tribe sought leave to participate as amicus curiae on August 23, 2005.  JA 20-23.  That motion was denied in the District Court's March 30, 2006 Minute Order without explanation.

Plaintiff filed its First Amended Complaint on March 21, 2008.  JA 57-73.

11

On April 2, 2008, the United States Defendants moved to dismiss the action under Fed. R. Civ P. 12(b)(1) and 12(b)(6). *See* Order on Motion to Dismiss, JA 74. The United States Defendants did not raise Fed. R. Civ. P. 12(b)(7) or Rule 19 as a defense. *Id*. The District Court granted the motion to dismiss on January 8, 2009, concluding that the Secretary's decision to take no action on the Amended Compact was committed to agency discretion and therefore unreviewable under the Administrative Procedures Act ("APA"). Order on Motion to Dismiss, JA 84.

Plaintiff appealed this decision and the District Court's subsequent denial of Plaintiff's motion to alter or amend the judgment under Rule 59, JA 86-93. Oral argument was held before this Court on March 8, 2011. On June 29, 2011, this Court reversed and remanded, Mandate, JA 94, concluding that review of the so-called "no-action approval" is not precluded under the APA. *Amador County v. Salazar*, 640 F.3d 373, 383 (D.C. Cir. 2011).

On November 4, 2011, the Tribe filed its Partially Opposed Motion [] for Limited Intervention to Move for Dismissal of This Action, in which it requested intervention for the limited purpose of moving to dismiss the action under Rule 19 for failure to join the Tribe as a required party nonetheless protected from suit by sovereign immunity. JA 95-97.

On November 7, 2011, the parties filed a Joint Status Report that stated, among other things, "With the exception of [the Tribe's motion to intervene for

12

purposes of Rule 19], this case is otherwise ready for oral argument and decision on the merits because it has been fully briefed on the Federal Defendants' dispositive motion and no further briefing is either due or necessary." JA 181.

On June 4, 2013, the District Court denied the Tribe's motion to intervene. JA 291-300. The Tribe timely filed its notice of appeal on August 2, 2013.

Meanwhile, a similar action implicating, among other things, validity of federal (i.e., the Compact) and State approval for the Tribe's proposed gaming operations and the Indian lands status of the Rancheria, was filed in the United States District Court for the Eastern District of California. The Complaint in that action was filed on February 2, 2010 by a group calling itself "Friends of Amador County," Bea Crabtree, and June Geary against the United States and State of California and related officials. *Friends of Amador County et al. v. Kenneth Salazar et al*., No. Civ. 2:10-348 WBS, 2011 WL 4709883 (E.D. Cal. Oct. 4, 2011) ("*Friends of Amador County*").

A hearing was held in the *Friends of Amador County* case on October 12, 2010 on the State defendants' motion to dismiss, at which counsel for the United States also appeared. On October 18, 2010, the court dismissed the State of California from suit based on the lack of a private right of action under IGRA but declined to reach the State's assertion that the State and the Tribe were required parties under Fed. R. Civ. P. 19. *Friends of Amador County et al. v. Kenneth*

13

*Salazar et al.*, No. Civ. 2:10-348 WBS, 2011 WL 4069473 (E.D. Cal. Oct. 18,

2010).   On September 26, 2011, the court heard argument on the Tribe's special

and limited appearance and motion to dismiss for failure to join the Tribe pursuant

to Rule 19, at which counsel for the United States also appeared.   On October 4,

2011, the court dismissed the suit in its entirety under Rule 19.   *Friends of Amador

County*, 2011 WL 4709883.   On December 9, 2011, the court denied the Plaintiffs'

request to alter or amend the judgment.   Plaintiffs then appealed the order of

dismissal and the denial of the request to alter or amend the judgment.   Argument

was made on January 15, 2014, and on January 29, 2014, the Ninth Circuit Court

of Appeals affirmed both decisions in their entirety. *Friends of Amador County v.

Salazar*, No. 11-17996, 2014 U.S. App. LEXIS 1802 (9th Cir. January 29, 2014)

(unpublished).

## SUMMARY OF ARGUMENT

Rule 24(a)(2) requires a court to permit intervention where an applicant's timely motion shows a cognizable interest in the litigation and the applicant is so situated that disposing of the action may impair or impede its ability to protect that interest, unless a party adequately represents that interest. A prospective intervenor must also demonstrate Article III standing.

The court below acknowledged the Tribe's satisfaction of the three substantive intervention requirements (standing, cognizable interest, and impairment), but failed to address the inadequacy of the government's representation of the Tribe's interests, and focused exclusively on timeliness of the request. The court erred in its timeliness analysis by relying primarily on the time elapsed since inception of the suit. However, timeliness is a totality of the circumstances analysis. It is to be judged in consideration of "all the circumstances," especially weighing the factors of time elapsed since the inception of the suit, the purpose of intervention, the need for intervention as a means of protecting the applicant's rights, and the probability of prejudice to existing parties.

In relying essentially solely on the elapsed time factor, the court ignored the significant changed circumstance that the government had been found in similar litigation involving similar claims against this Tribe's gaming compact not to adequately represent the Tribe's interests (which inadequate representation the

Ninth Circuit Court of Appeals has now affirmed).  This Court recently clarified, however, that timeliness is not required for its own sake and the timeliness requirement is not a punishment for the dilatory.  Rather, timeliness is required primarily to prevent potential intervenors from unduly disrupting the litigation to the unfair disadvantage of the parties.  But the Tribe seeks intervention solely to raise the Plaintiff's defect in failing to join the Tribe and to request dismissal under Rule 19 due to the Tribe's sovereign immunity from suit—relief the government defendant should have moved for itself.  The Tribe sought to bring early termination to the suit, not to expand or add to the burdens of the litigation. However, in contravention of this multi-factored analysis, the court failed entirely to account for this sole purpose of the Tribe's intervention (to raise Rule 19), and further failed to account at all for the Tribe's need in intervention to protect its substantial interests.

The Tribe's interests have been inadequately represented by the United States, which has failed to raise the joinder defect, although it continues to use the Rule 19 defense in other similarly situated cases involving the interests of absent tribes.  This striking fact and the government's apparent desire to litigate certain IGRA or procedural issues for its own policy purposes fails to protect the Tribe's interests and easily satisfies the low threshold of showing that an existing party "may" not adequately represent an absentee's interests—a threshold lowered yet

16

when a government is the party said to represent those interests. Thus, this Court should reverse the lower court's order on timeliness but also determine, as it may do, that the government defendant "may" not adequately represent the Tribe's interests below, and order intervention.

# ARGUMENT

## I.    STANDARD OF REVIEW

The standard of review for a district court's denial of a motion to intervene is mixed.  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003). Pure issues of law are reviewed de novo.  *Id*.  Findings of fact are reviewed for clear error.  *Id*.  And issues involving judicial discretion, including, in this Circuit, timeliness, are reviewed for abuse of discretion.  *Id*.

Here, the District Court limited its denial of the Tribe's motion to the question of timeliness under Rule 24.  Although the timeliness holding is to be reviewed under an abuse of discretion standard, this Court's review of the denial of the Tribe's motion to intervene, because it necessarily implicates Rule 19, should be reviewed de novo.  *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("To the extent that a district court's ruling on a motion to intervene as of right is based on questions of law, it is reviewed *de novo*[.]").

## II.    INTRODUCTION

The "four requirements for intervention [as of right] under Rule 24(a)(2) [are]: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties." *Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001) (internal quotations omitted).  *See also Roane v. Leonhart*, No. 12-5020, 2014 WL 259659, *3 (D.C. Cir. January 24, 2014) ("A

18

district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties.") (internal citations omitted). A prospective intervenor also "must demonstrate that it has standing under Article III of the Constitution." *Fund for Animals, Inc.*, 322 F.3d at 732.

As an initial matter, the District Court's denial of the Tribe's request to intervene failed to acknowledge that "a court should be more reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right than if it is permissive intervention." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). *See also Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 369 (3d Cir. 1995) ("In determining whether an application for intervention as of right is timely, we are reminded that, '[s]ince in situations in which intervention is of right the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.' Wright & Miller [] § 1916 at 424.").

The District Court properly found that the Tribe has standing, a point which the County did not dispute. Underlying Decision, JA 296. Further, the District Court found that:

19

> Because the Tribe has demonstrated Article III standing, it also has "demonstrate[d] the existence of a legally protected interest for purposes of Rule 24(a)." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Indeed, the County disputes neither that the Tribe has a cognizable interest in this litigation nor that such interests would be impaired in the event of an adverse ruling. Accordingly, whether intervention is warranted turns on the remaining two Rule 24(a) factors: the timeliness of the Tribe's motion and the degree to which its interests already are adequately represented.

*Id.* Thus, at the outset of the Order, the District Court conceded that the Tribe has satisfied three of the five Rule 24 requirements (including standing). Despite this, the Order went on to focus exclusively on the timeliness issue, finding it dispositive. The District Court made no findings as to Rule 24's adequate representation requirement, and, as explained in Section IV below, this Court may make that determination in the first instance.

In denying the Tribe's request for intervention for the limited purpose of moving to dismiss the action for failure to join it as a required party that cannot be joined because it is protected by sovereign immunity, the District Court abused its discretion in its assessment of the time elapsed factor and in its failure to adequately consider all four of the timeliness factors.

## III.   THE DISTRICT COURT ABUSED ITS DISCRETION IN ITS EVALUATION OF THE ELAPSED TIME FACTOR AND BY FAILING TO CONSIDER ALL OF THE RULE 24 TIMELINESS FACTORS.

"[T]imeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the

20

purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *American Tel. & Tel. Co.*, 642 F.2d at 1295).  "While timeliness is a prerequisite to any claim for intervention under Rule 24, it is settled -- particularly where intervention is sought as of right -- that the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness." *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C. Cir. 1972).  "[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties. *See id.* [7C Charles Alan Wright et al., Federal Practice and Procedure § 1916 (3d ed. 2007)] at 541 ("The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.")." *Roane*, No. 12-5020, 2014 WL 259659.

The District Court erred by misapprehending the events relevant to the elapsed time factor and by overemphasizing the elapsed time factor without adequately weighing the other three timeliness factors.  The four timeliness factors are taken in turn below.

### A. The District Court Abused Its Discretion as to the Elapsed Time Factor by Failing to Acknowledge that Events in 2011 Prompted the

**Request and that the Motion to Intervene Was Distinct from the Tribe's Earlier Amicus Request.**

The District Court abused its discretion as to the elapsed time factor by relying too heavily on the facts that, in 2005, the Complaint was filed and the Tribe requested to participate as amicus curiae, and by failing to adequately consider the evolution of the litigation—no answer has yet been filed—and the important events of 2011 that prompted the request for intervention.  The District Court opined that because the Tribe knew of the threat to its interests in 2005, it should have moved to intervene then.  Underlying Decision, JA 298-299 ("[t]he record flatly contradicts the Tribe's argument that it only recently learned of the supposed conflict of interest.").  However, although the Tribe requested amicus curiae status in 2005 to raise the Rule 19 issue, there are significant distinctions between the 2005 amicus request and the Tribe's 2011 motion to intervene.   The District Court also opined that events in 2011 "may [have] serve[d] to support and heighten the Tribe's concerns, but they raise nothing new; rather, they simply support what the Tribe clearly recognized from the outset."  Underlying Decision, JA 299 (citing only *Creusere v. Bd. of Educ.*, 88 F. App'x. 813, 825 (6th Cir. 2003)).  But the events in 2011 were a realization of the earlier concerns about a potential conflict of interest in the United States' representation, and not merely a heightening.  And the District Court's characterization fails to acknowledge, as this Circuit's case law does, that a potential conflict of interest can materialize later in litigation.  This

22

realization that the United States was no longer adequately representing the Tribe's interests proved to the Tribe its need to intervene—which it promptly did. It was the accumulation of events in 2011 that prompted the Tribe's motion for intervention, filed November 4, 2011, which—it goes without saying—was a request distinct and independent of the Tribe's earlier request to participate as amicus.

The Supreme Court recognizes that the adequate representation of would-be intervenors can change at a later stage in the litigation, and it has held that the Rule 24 elapsed time analysis begins with this change. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (U.S. 1977) ("The critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests."). Similarly, this Court has recognized that a would-be intervenor need not intervene until after the final judgment where a previously representative party had chosen not to appeal. *American Tel. & Tel. Co.*, 642 F.2d at 1295 ("In the present case, intervention is essential as a means of preserving MCI's rights, since the United States has not taken an appeal."). *Cf. Hodgson*, 473 F.2d at 126 (reversing the District Court's refusal to reconsider a

23

request to intervene where two intervening district court decisions "taken together, substantially changed the context in which appellants last moved for intervention, thereby justifying and indeed requiring the District Court's reconsideration of their application."). *See also Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140 (D.D.C. 2002) ("The appropriate starting point for the timeliness inquiry [regarding a motion to intervene] is not the date that the would-be intervener became aware of the existence of the litigation, but the date the intervener became aware of the implications of the litigation."), *aff'd*, 333 F.3d 228 (D.C. Cir. 2003).

Other Circuits concur that the purpose or need for intervention can arise at all stages of litigation. *See City of Bangor v. Citizens Communs. Co*., 532 F.3d 70, 84 (1st Cir. 2008) ("although it was 'puzzling to the [District] Court that the State decided to wait approximately four years to intervene,' it was also true that 'the State has acted expeditiously since learning how its interests were imperilled [sic] by the Court's June 27, 2006 decision.'"); *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) ("The intervenors acted as soon as they had notice that the proposed settlement was contrary to their interests. … [W]e invoke the principle that until parties have notice that the government may not be representing their interests, parties are entitled to rely on the presumption that the government is representing their interests.") (internal citations omitted); *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) ("Nor do we think the association's

24

motion to intervene, even though not filed until the district judge had entered his final judgment, was untimely--assuming that all the association wants is to take an appeal[.]"); *Mt. Top Condo. Ass'n*, 72 F.3d at 370 (explaining that "[w]e have held that, 'to the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights[,]'" and concluding "that the appellants 'promptly' sought intervention upon learning that their interests were in jeopardy.").  And other Circuits have recognized that the adequacy of the United States' representation of a non-party's interests could change over the course of an action, and so the question of adequacy of representation could be deferred until later in the case. *Maine v. Director, United States Fish & Wildlife Serv.*, 262 F.3d 13, 17-21 (1st Cir. 2001) (district court properly denied intervention, but court of appeals directed it to revisit matter if government no longer appeared to be representing interests of proposed intervenors adequately).

However, even had the events in 2011 not demonstrated that the United States' representation of the Tribe's interests was no longer adequate, *Roane,* No. 12-5020, 2014 WL 259659, at *7 clarifies that "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties," and, thus, "measuring the

length of time passed 'is not in itself the determinative test.'" (internal citations omitted). Roane thus suggests that the elapsed time analysis is meant to inform the prejudice analysis more than require a stand-alone elapsed time analysis. *See* Section III(D), below (prejudice discussion).

1. **The District Court Failed to Acknowledge that Events in 2011 Effected a Significant Change on the Possible Impairment of the Tribe's Interests.**

Here, the District Court apparently concluded that the operative date in the elapsed time analysis was the Tribe's request to participate as amicus curiae, submitted on August 23, 2005. Amicus Motion, JA 20-23. However, it was the series of events that took place later, in 2011, that prompted the Tribe to seek limited intervention. The District Court's failure to recognize that these later events demonstrated that the United States may no longer adequately represent the Tribe's interests was an abuse of discretion. *See Roane*, No. 12-5020, 2014 WL 259659, at *7 ("Though the 'time elapsed since the inception of the suit' is relevant, … measuring the length of time passed 'is not in itself the determinative test,' … because we do not require timeliness for its own sake… ('The timeliness requirement is not intended as a punishment for the dilatory…').") (internal citations omitted).

This action was dismissed by the District Court on January 1, 2009. Plaintiff appealed. During the pendency of the appeal, there was a tolling,

therefore, as far as the Tribe was concerned, as its interests had been protected

because the suit imperiling its jurisdiction and sovereign right to operate gaming

on its Rancheria had been dismissed.  Although United States counsel[2] in the

separate but similar matter of *Friends of Amador County* made statements at the

October 12, 2010 hearing first suggesting the United States' conflict of interest in

that matter, *see* October 12, 2010 Hearing Transcript, JA 167-173, this suggestion

alone was not, as the District Court asserted[3], reason for the Tribe to request

intervention in the District Court matter that had been, as of that date, dismissed.

Facially, the matter here could not have become a real concern to the Tribe's

interests until the dismissal was reversed and remanded by this Court on June 29,

2011.  Mandate, JA 94.  Upon remand, it was not clear how the United States

would proceed with the litigation (and still is not clear), and whether the Tribe's

Rule 19 concerns would then be raised, which they have not.  In fact, on remand,

the parties failed to take any action until the District Court's October 7, 2011

Minute Order ordering the parties to file a joint status report by November 7, 2011.

The Tribe's motion to intervene was filed on November 4, 2011, just before the

---

[2] The same government attorney was counsel for the United States in both district court actions.

[3] *See* Underlying Decision, JA 299 n.7 (asserting that "even if these statements did constitute new evidence of a conflict of interest, the Tribe offers no justification for its delay in filing the present motion after learning of this supposed conflict in 2010.").

joint status report; thus, the Tribe's request was filed promptly in relation to the remand.

Meanwhile, in the *Friends of Amador County* case, the Tribe acted on its concerns about the United States' conflict of interest in that matter and requested intervention to raise the Rule 19 issue. At the September 26, 2011 hearing on that motion, United States counsel once again demonstrated that the United States was no longer adequately representing the Tribe's interests. *See* September 26, 2011 Hearing Transcript, JA 174-179. The district court in that matter ruled on the Tribe's motion on October 4, 2011, allowing the Tribe's appearance and dismissing the suit on Rule 19 grounds.

Taking all of these circumstances together, as this timeliness consideration requires, the Tribe promptly moved for limited intervention in this Court after its suspicions that the United States may no longer adequately represent its interests were realized in *Friends of Amador County*. Measured either from the September 26, 2011 hearing on the Tribe's motion in *Friends of Amador County* or the district court's disposition of the motion on October 4, 2011, the Tribe's motion for limited intervention in this matter on November 4, 2011 was prompt. Even should the Tribe have acted on earlier suggestions that the United States had a conflict of interest that was affecting its adequate representation of the Tribe's interests—a point that the Tribe here does not concede, as the Tribe asserts that it was the

28

accumulation of events in 2011 that confirmed that its suspicions regarding

inadequate representation were realized—it would not have been reasonable to

request intervention in this matter until after the June 29, 2011 reversal and remand

by this Court.

> **2. The District Court Improperly Decided the Tribe's 2011 Intervention Request on the Facts and Arguments of the Tribe's 2005 Amicus Request.**

The District Court abused its discretion when it reasoned that consideration

and denial of the Tribe's 2005 amicus request precluded the Tribe from requesting

intervention at a later date.  It is an abuse of discretion to rest a determination on a

2011 motion to intervene on the facts and arguments of a 2005 request to

participate as amicus.

Contrary to the District Court's reasoning, that the Tribe submitted a request

to participate as amicus in 2005 and then requested to intervene in 2011 only

demonstrates the changed circumstances in 2011.  Although the (J. Roberts)

District Court did not given any reason for denying the request to participate as

amicus, instead denying it without explanation in the March 30, 2006 Minute

Order, it can be assumed that the District Court concluded that the Tribe need not

be present to protect its interests at that time.  And, as the Tribe has cognizable

interests that may be impaired (as the (J. Rothstein) District Court found here in its

Underlying Decision at JA 296) and the Tribe's amicus request was promptly filed,

it stands to reason that the earlier denial of amicus status was because the District Court believed the Tribe's interests were adequately represented by the United States. Thus the Tribe's 2011 request for intervention was fundamentally distinguishable from the 2005 request for amicus because of its assertions that the United States' representation of the Tribe's interests had in fact become inadequate in 2011. And, as shown above, courts clearly allow requests for intervention to be brought when later events so prompt.

The District Court concluded that simply because the Tribe requested to participate as amicus and identified its interests in the suit in 2005, its 2011 request for intervention was redundant. JA 298-299. But the Tribe's amicus request identified as the potential conflict of interest between the United States and the Tribe that the United States did not face the same kind and degree of harm as the Tribe from the suit's claims. Proposed Amicus Brief, JA 38. The amicus request did not argue (and, of course, could not have) that the events in 2011 would demonstrate that what had been a potential for the United States' inadequate representation had in fact materialized into a real and actual conflict of interest.

Moreover, the Tribe's 2011 request to intervene was unique and distinguishable—and would have conferred a significantly different set of rights— from the 2005 request as the ability to file an amicus brief is not a substitute for intervention of right under Rule 24(a). *Utahns for Better Transp. v. United States*

30

*DOT*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("the right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2).") (internal quotation omitted).

### B. The Tribe's Purpose in Seeking Intervention was Affirmed but then Disregarded.

The Tribe's request for intervention as of right was not a general request to participate in the litigation but rather was for the limited purpose of moving to dismiss the case under Rule 19. However, the District Court's denial of the Tribe's request failed to adequately consider the weighty purpose of the Tribe's intervention (to raise Rule 19)—the satisfaction of most of the requirements of which was recognized by the Court's Rule 24 findings. Additionally, the protections afforded a non-party by Rule 19 (regardless who raises the issue), especially a non-party who enjoys sovereign immunity, should have been weighed heavily.

#### 1. The Decision's Proffered Analysis Significantly Undervalues the Weight that Should have been Accorded to the Tribe's Purpose for Intervention.

In response to the Tribe's argument below that the timeliness analysis should weigh heavily that intervention was sought for the limited purpose of moving to dismiss under Rule 19, the District Court said the Tribe cited no authority for the proposition that such "special consideration" is warranted. JA 297. First, the timeliness analysis itself (and the cases discussing it) explicitly requires

31

consideration of "all the circumstances, <u>especially weighing</u>" the purpose for which intervention is sought (and other factors).  *See British Am. Tobacco*, 437 F.3d at 1238 (quoting *American Tel. & Tel. Co.*, 642 F.2d at 1295) (emphasis added).  No "special consideration" was therefore required; rather, the District Court simply had a duty to weigh the Tribe's purpose in requesting intervention, which it did not fulfill.

Second, though, cases addressing Rule 19 (the applicant's purpose below) and intervention by an entity with sovereign immunity uniformly express deference for sovereigns—which translates ineluctably into such special consideration.  As the Supreme Court has explained:

> A case may not proceed when a required-entity sovereign is not amenable to suit. These cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign.

*Philippines v. Pimentel*, 553 U.S. 851, 867 (2008); *see also Klamath Tribe Claims Comm. v. United States*, 106 Fed. Cl. 87, 95-96 (Fed. Cl. 2012).  And this Court has recognized a heightened duty to consider a sovereign's purposes for intervention, particularly where the sovereign's "sole purpose in intervening was to raise a highly tenable challenge to the District Court's subject matter jurisdiction." *Acree v. Republic of Iraq*, 370 F.3d 41, 50-51 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848, 859-60 (2009).  Although

32

Rule 19 is not alone jurisdictional in nature, it becomes jurisdictional when it turns on the question of sovereign immunity. *Brown v. Sec'y of the Army*, 78 F.3d 645, 648 (D.C. Cir. 1996) ("Whether the United States has consented to be sued 'is the sort of jurisdictional question which may be raised at any time, either by the parties or by the court sua sponte.'") (internal citation omitted); *see also Alto v. Black*, No. 12-56145, 2013 U.S. App. LEXIS 25684, 33-34 (9th Cir. Dec. 26, 2013) ("embedded in the Rule 19 issue in this case is a quasi-jurisdictional issue— sovereign immunity"). Whether jurisdictional or not, the sovereign immune Tribe sought to intervene and raise a highly tenable challenge to the continuation of the case in the Tribe's absence, which tenability the District Court conceded.

Third (though related), the Tribe's purpose in moving to intervene was to raise the Plaintiff's joinder defects under Rule 19 and to request dismissal. Instead of addressing the Tribe's Rule 19 claims as related to the "purpose" segment of its timeliness analysis, the decision answered that "[t]he Tribe's proposed motion for dismissal under Rule 19 merely repeats earlier arguments it advanced in 2005." JA 299. But as discussed above in Section III(A), the Tribe's 2011 request describes a significant change in circumstances, i.e., the revelation of a government conflict in representing this Tribe. See Underlying Decision, JA 298.

In addition, the District Court's own discussion of the Rule 24 requirements itself demonstrates satisfaction of Rule 19's dismissal standards, which are

33

intended to be similar.[4]  But as to its timeliness analysis, the court seems not to have considered this strikingly important identity of concerns.  Within its review of the Rule 24 requirements—timeliness, cognizable interest, impairment of that interest, lack of adequate representation, and standing—the court makes important findings equally related to the Tribe's Rule 19 purpose for intervention:

> The County does not dispute the Tribe's standing, and the Court agrees that the Tribe has demonstrated an "injury in fact" that is "fairly . . . trace[able] to the challenged action" and that would be "redressed by a favorable decision." Lujan, 504 U.S. at 560. A judgment favoring the County would vacate the Secretary's approval of the Amended Compact, strip the Rancheria of its designation as "Indian lands," and thereby enjoin the Tribe from engaging in Class III gaming activities. These legally cognizable injuries to the Tribe's financial and sovereign interests trace directly to the County's initiation of this action and would be redressed by the action's dismissal.

---

[4]  *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc*., 471 F.3d 377, 389-390 (2d Cir. 2006) ("These rules are intended to mirror each other.").  As explained in 4-19 Moore's Federal Practice - Civil § 19.02:

> Indeed, the operative language of the two Rules is identical. [n.98 Compare Fed. R. Civ. P. 19(a)(1)(B)(i) with Fed. R. Civ. P. 24(a)(2); …] This fact is no accident. The two Rules were revised together as part of the 1966 amendments. The overlap is so apparent that precedent construing one Rule can be applied to the other, and courts have imported the Rule 24 provision concerning representation by extant parties into the compulsory joinder doctrine (see § 19.03[3]). Both rules share a primary concern, in part, of protecting the interests of non-parties.

Under Rule 19(a)(1), a party is required if, among other reasons, the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may, as a practical matter impair or impede the person's ability to protect the interest.  Fed. R. Civ. P. 19.  And impairment of an absentee's interests may be mitigated where an existing party adequately represents those interests.  *See also Philippines*, 553 U.S. at 855 (articulating the Rule 19 test).

> Because the Tribe has demonstrated Article III standing, it also has "demonstrate[d] the existence of a legally protected interest for purposes of Rule 24(a)." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Indeed, the County disputes neither that the Tribe has a cognizable interest in this litigation nor that such interests would be impaired in the event of an adverse ruling.

JA 296 (emphasis added).

In its timeliness discussion, the decision appealed was obliged to consider all the circumstances, especially (among others) the purpose of intervention. The purpose of the Tribe's intervention below was to raise Rule 19, which requires a consideration similar to that for Rule 24(a). The court's Rule 24(a) discussion acknowledges the obvious detriment this case poses to the Tribe and essentially finds, therefore, that the Tribe satisfies Rule 19 (aside from the adequate representation issue, discussed below in Section IV). Thus, the decision below erred in failing to acknowledge this unmistakable intersection between Rules 24 and 19 as relevant here, and in giving this intersection due weight in its timeliness consideration. In other words, the order acknowledges the important purpose the Tribe sought to intervene (i.e., Rule 19), makes Rule 24 findings tantamount to affirmation of the Tribe's Rule 19 position, but then fails to grant this recognition really any apparent weight at all.

### 2. The Decision Below Diminishes the Tribe's Purpose for Intervention Merely Based on Its Non-Party Status.

The District Court concluded its substantially brief "purpose" analysis by reasoning that, "[w]hile a Rule 19(b) motion to dismiss may be raised by the existing parties as late as a trial on the merits, see Fed. R. Civ. P. 12(h)(2), there is no indication that non-parties should be afforded similar deference in a timeliness analysis under Rule 24." JA 297. But this distinction evidences the court's failure to consider, especially, the purpose for intervention; here, the sole reason for the non-party Tribe's attempted intervention was to do what the government party should have done, and long ago (i.e., move for Rule 19 dismissal).

Further, given that the Tribe's intervention purpose here was to raise Rule 19, and that the Tribe's Rule 19 argument rested in part on its sovereign immunity, the analysis became jurisdictional. *See United States v. American Tel. & Tel. Co.*, 461 F. Supp. 1314, 1320 (D.D.C. 1978) ("[A] claim of lack of jurisdiction may be raised and entertained at any time (Rule 12(h)(3), F.R.Civ.P.)[.]"); *Brown*, 78 F.3d at 648; *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) ("sovereign immunity claims are jurisdictional and thus cannot be waived by failure to present the defense to the trial court."). *See generally Vann v. Kempthorne*, 534 F.3d 741, 745-746 (D.C. Cir. 2008) (allowing intervention for the purpose of raising Rule 19 concerns); *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1319, 1323 (Fed. Cir. 2007) (same). Thus the court should have permitted intervention, even for a non-party

36

and regardless of any supposed tardiness. Additionally, the duty of a court to raise a Rule 19 issue sua sponte similarly militates in favor of the District Court's more comprehensive consideration of the purpose for the Tribe's intervention request. *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1495 n.3 (D.C. Cir. 1995) ("[T]his court has a duty to raise sua sponte the issue of whether the State of Kansas is an indispensable party.")

### C. The Tribe had Significant Need for Intervention as a Means of Preserving Its Rights.

The District Court failed entirely to consider the need for intervention factor. *See* Underlying Decision, JA 297-299. The District Court found, and the parties did not dispute, that the Tribe satisfied three intervention factors at the outset: cognizable interest, impairment of the interest, and standing. Id. at JA 296. The undisputed satisfaction of three of the five intervention factors—and the satisfaction of these three factors in particular—demonstrates the Tribe's significant need for intervention to protect its acknowledged interests, which the United States Defendants left unprotected.

The District Court's failure to acknowledge the substantial protections called for in both the Rule 24 timeliness analysis that requires consideration of the totality of the circumstances and the Tribe's Rule 19 and sovereign interests was an abuse of its discretion. *See also* above, Section III(3)(B) ("purpose" discussion).

37

**D. In Light of This Court's Recent Clarification to the "Timeliness"**
**Requirement, the Tribe's Intervention to Raise Rule 19 Will Not**
**Unduly Disrupt the Litigation to the Unfair Detriment of the Parties.**

The District Court concluded that, "because the parties have represented that

'this case is otherwise ready for . . . decision,' Joint Status Report at 2 [JA 181],

the Tribe's intervention will further delay resolution of the merits to the detriment

of the existing parties."  Underlying Decision, JA 297-298.  However, the District

Court's emphasis on "further delay" (an allusion to the elapsed time since

inception of the suit, as discussed above at Section III(A)) misapprehends the

prejudice factor as courts have construed it, and runs counter to this Court's recent

(January 24, 2014) clarification that the timeliness requirement is far less about

elapsed time and far more about "unduly disrupting" the litigation "to the unfair

detriment of the existing parties."  *Roane*, No. 12-5020, 2014 WL 259659 at *3.

In *Roane*, No. 12-5020, 2014 WL 259659 at *3, this Court recently

refocused the timeliness requirement to emphasize prejudice and diminish

(relatively) elapsed time:

> Though the "time elapsed since the inception of the suit" is relevant, *id.* (internal
> quotation marks omitted), measuring the length of time passed "is not in itself the
> determinative test," *Hodgson,* 473 F.2d at 129, because we do not require
> timeliness for its own sake. *See* 7C Charles Alan Wright et al., Federal Practice
> and Procedure § 1916, at 532 (3d ed. 2007) ("The timeliness requirement is not
> intended as a punishment for the dilatory...."). Instead, the requirement of
> timeliness is aimed primarily at preventing potential intervenors from unduly
> disrupting litigation, to the unfair detriment of the existing parties. *See id.* at 541
> ("The most important consideration in deciding whether a motion for intervention
> is untimely is whether the delay in moving for intervention will prejudice the
> existing parties to the case."); *cf. Hodgson,* 473 F.2d at 128–29. Thus, even where

38

> a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking intervention "unfairly disadvantage[d] the original parties." [*Nat. Res. Def. Council v.*] *Costle,* 561 F.2d [904] at 908 [(D.C. Cir. 1977)].

*See also, e.g., Mt. Top Condo. Ass'n*, 72 F.3d at 369-370 ("While four years had elapsed before the Seipels filed their motion to intervene, the critical inquiry is: what proceedings of substance on the merits have occurred? … This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved.") (internal citations omitted). The Tribe's intervention here, especially considering its purpose, will not add burdens to the litigation but could hasten resolution of the suit, and will neither disadvantage nor unfairly disadvantage the parties.

Based on *Roane*, the prejudice analysis is particular to the burdens of litigation and the impact of intervention to those burdens—i.e., intervention may not be timely where application for intervention comes after a long expensive trial or once significant resources have been expended by the parties for purposes of moving litigation to a more advanced stage. But here, the Tribe requested intervention while the motion to dismiss, pending since 2008, remains before the District Court. This litigation remains in the early stages.

The action was filed in April of 2005, but Plaintiff elected to file a First Amended Complaint three years later on March 21, 2008, rendering moot all filings prior to that date (and placing entirely with Plaintiff any prejudice resulting

from the loss of those three years).  The District Court then dismissed the action on

January 8, 2009 for failure to state a claim.  Amador County appealed the Court's

dismissal to the D.C. Circuit, who only recently decided the matter and remanded

it to the court below with instructions to "give the district court an opportunity to

assess the merits in the first instance."  *Amador County*, 640 F.3d at 384 (decided

May 6, 2011).[5]  On October 7, 2011, the Court issued a Minute Order requiring a

joint status report and proposed schedule on which this case should proceed on

remand.  The Tribe moved for intervention less than one month later.

The Tribe's intervention at this time—when the litigation has essentially

recently been recommenced and no merits have been addressed—and solely for

purposes of raising Plaintiff's joinder defect, will not add to the burdens of this

litigation.  *See Smoke*, 252 F.3d at 471 (allowing tribe's post-judgment

intervention); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("This case

was filed in 2004, and after initial filings and discussions by the parties, the case

was stayed for two years. … The Court has not issued any decisions on the merits

of the claim, and no discovery has or will occur in this case, as it is based on the

administrative record. … In viewing all of the relevant circumstances of this case,

---

[5] Further confirming that the litigation remains in the earliest (procedural) stages,
this Court stated that "Amador County may well be bound by the *Hardwick*
Judgment, in which case it will lose on the merits, but for the purposes of standing,
we assume the merits in favor of the plaintiff."  *Id*. at 378 (internal quotations
omitted).

this Court finds that [the] motion is timely.").  Indeed, the intervention seeks the suit's early termination.

The District Court's conclusion that the Tribe's limited intervention would prejudice the parties because of delay fails to acknowledge the particular timeline of events before it and fails to account for the possibility of expanded litigation. Three days after the Tribe submitted its motion for limited intervention, the parties submitted a joint status report stating that the case was ready to proceed on the remaining live defenses in the United States' motion to dismiss.  The joint status report stated that "[w]ith the exception of matters discussed in Paragraph 3 below [Tribe's motion for limited intervention], this case is otherwise ready for oral argument and decision on the merits because it has been fully briefed on the Federal Defendants' dispositive motion and no further briefing is either due or necessary."  Joint Status Report, JA 181.  Although this statement raises the possibility that the litigation could be resolved on the remaining live defenses in the United States' motion to dismiss, it by no means guarantees an end to the litigation, nor any particular future course.  And the outcome of deciding the motion to dismiss cannot be predicted:  it is not at all clear whether the merits would be reached or whether the motion would be granted or denied on procedural or merits arguments.  Moreover, as the Tribe argued below, the fact that the

pending motion is a motion to dismiss on the 2008 Amended Complaint

demonstrates that this litigation, in fact, remains in the earliest stages.

As this Court explained in *Hodgson*, 473 F.2d at 129, even an application to

intervene filed seven years after the action was tried should have been allowed

where "the proposed intervenors expressly disavowed any desire to reopen any

previously-litigated question, and sought only to participate in the remedial, and if

necessary the appellate, phases of the case."  Similarly, in *Natural Resources*

*Defense Council v. Costle*, 561 F.2d 904, 907-08 (D.C. Cir. 1977), the applicant

requested intervention seven years after the case was filed for the purpose of

participating in the implementation of the settlement agreement..  This Court

concluded that it was not the seven years since the filing of the suit that mattered,

but rather that "'this limited goal' of future participation 'does not appear to

impose any untoward burden' on the original parties …." *Id*. at 908 (quoting

*Hodgson*, 473 F.2d at 129).

Finally, the Tribe seeks intervention only after some, but not all (certainly

not Rule 19 or Rule 12(b)(7)), defensive arguments have been determined on the

pleadings and no discovery or litigation on the merits has transpired.  And because

the joinder of the Tribe is an issue that (as explained above in Section III(B)(2))

can be dispositive and must be raised, it is more benefit than burden to the District

Court to see this issue decided.  *See Hodgson*, 473 F.2d at 129 ("This limited goal

42

does not appear to impose any untoward burden on the UMWA, the Secretary or the court. [fn.68 … Here the union has already been summoned into court by the Secretary to defend the validity of the trusteeships; intervention by appellants would not require any more than that. In terms of assisting in the shaping of relief, appellants clearly offer more of a benefit than burden to the Secretary.]); *Acree*, 370 F.3d at 50 ("[A]ppellees assert no prejudice arising from the United States' intervention. Nor could they, given the District Court's independent obligation to assure itself of its own jurisdiction.").  Weighed against the significant prejudice to the Tribe that will result if it is not allowed to defend its interests in asserting its sovereign immunity from suit and its sovereign right to govern and develop the Rancheria, the Tribe's intervention here works no prejudice on the parties.

## IV.    THIS COURT CAN AND SHOULD DETERMINE THAT THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT THE TRIBE'S UNIQUE INTERESTS HERE.

### A. This Court May Determine Lack of Adequate Representation in the First Instance

The District Court did not reach the lack of adequate representation factor under Rule 24 because it limited its inquiry to timeliness, which it found the Tribe had not satisfied.  Where a district court has not considered one of the Rule 24 factors, this Court may make that determination.  *See Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (making the timeliness

43

determination under Rule 24 where district court did not consider the issue). Additionally, then, because the District Court concluded that the Tribe has satisfied the cognizable interest and impairment of that interest factors of Rule 24 as well as standing, Underlying Decision, JA 296, should this Court reverse the District Court's determination as to timeliness and independently hold that the lack of adequate representation factor is satisfied, this Court may order the District Court to allow the Tribe's intervention on remand.

### B. The *Trbovich* Standard Teaches that the Burden for Showing Inadequate Representation is Minimal.

Intervention as of right is satisfied if the movant shows that "representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Fund for Animals, Inc.*, 322 F.3d at 735.  Referencing *Trbovich*, this Court has explained this requirement as "not onerous." *Dimond*, 792 F.2d at 192; *see also Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981); *American Tel. & Tel. Co.*, 642 F.2d at 1293 (a petitioner whose interests are implicated should generally be permitted to intervene "unless it is <u>clear</u> that the party <u>will</u> provide adequate representation for the absentee") (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 736 § 1909, page 524 (1st ed.1972)) (emphasis added).

44

As the natural result of this "minimal" standard required in demonstrating inadequate representation, this Court suggests a correspondingly elevated threshold for demonstrating adequate representation.  *See Fund for Animals, Inc.*, 322 F.3d at 737 (even where a partial alignment of interests exists, "that does not guarantee the adequacy of representation.").  Finally, this Court explains that the burden may be on the opponent of intervention to demonstrate adequacy of representation.  *See Id.* at 736, note 7.  That the burden is placed on the opponent arises from the language of Rule 24(a)(2).  Where the first three factors of that rule are satisfied, "intervention 'shall' be permitted 'unless' the applicant's interest is already adequately represented."  *Id.*

### C. The Federal Trust Responsibility Has Not Been Held to Create a Duty to Represent the Specific Interests of a Tribe in the Context of Litigation.

This Court has explained that "an Indian tribe cannot force the government to take a specific action unless a treaty, statute or agreement imposes, expressly or by implication, that duty." *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995).  It further has said that "courts must appreciate that whatever fiduciary obligation otherwise exists [between the Government and Indian tribes], it is a limited one only." *Id.* (quoting *National Wildlife Fed'n v. Andrus,* 642 F.2d 589, 612 (D.C.Cir.1980)).  Thus, the trust doctrine has not been held itself to

obligate the United States to take any particular position with respect to a particular tribe in the context of litigation.[6]

### D. As the United States Failed to Move to Dismiss for Rule 19, Its Inadequate Representation on that Point Alone is Unassailable.

Notably, when measuring a party's adequacy in representing an absentee's interests, "it is important to consider the purpose for which intervention is granted." *American Tel. & Tel. Co.*, 642 F.2d at 1294. Here, the Tribe sought to intervene solely to move for dismissal under Rule 19—and *solely because the United States as defendant failed itself to move for this relief.* In other words, however the United States may be viewed generally as representing the Tribe's interests below, (perhaps due to a desire to litigate certain issues raised by Plaintiff's complaint) the United States has indisputably not adequately represented the Tribe's interest in employing the obvious (and dispositive) remedy of Rule 19. Thus, on the singular issue of the Plaintiff's joinder defect (and the singular purpose of the Tribe's attempted limited intervention), the defendant has not adequately represented the Tribe's interests.

---

[6] *See* Ann C. Juliano, "Conflicted Justice: The Department of Justice's Conflict of Interest in Representing Native American Tribes," 37 *Ga. Law. Rev*. 1307, 1323 (2003) in which Professor Juliano describes the United States as a "Conflicted Trustee," and explains the inherent conflict of interest of the United States in tribal cases and, in particular, inter-agency conflicts between the Departments of Interior and Justice regarding appropriate litigation strategy or positions. *Id*. at 1329, n.136 and accompanying text.

46

Due to competing intra-government and policy concern (that apparently exist here), this Court has "often concluded that government entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc.,* 322 F.3d at 736. *See also Hardin*, 600 F.Supp.2d at 16 (explaining that the D.C. Circuit allows private companies to intervene on the side of the government "even if some of their interests converge" because the Circuit "has frequently found 'inadequacy of governmental representation' when the government has no financial stake in the outcome of the suit.") (collecting cases); *Dimond*, 792 F.2d at 193 (a government agency's representation of both its public or policy interests and the private interests of an absentee "is 'impossible' task."); *Trbovich*, 404 U.S. at 539 ("Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the [absentee] may have a valid complaint about the performance of 'his lawyer.' Such a complaint . . . should be regarded as sufficient to warrant relief in the form of intervention under Rule 24 (a)(2)."); *Vann v. Salazar*, 883 F. Supp. 2d 44, 51 (D.D.C. Sept. 30, 2011) ("the Federal Defendants cannot represent the Nation's interest in a suit where it has not only different but conflicting interests."); *compare Kickapoo Tribe of Oklahoma v. Lujan*, 728 F. Supp. 791, 797 (D.D.C. 1990) (an Indian tribe is "entitled to protect on its own" its fundamental interests). Such competing concerns exist here where the United

47

States must represent its intra-government and policy interests as well as the

Tribe's interests.

### E. The United States' Actions in this Litigation and Regarding this Tribe Satisfy the Minimal Threshold that the Government "May" Not Adequately Represent the Tribe's Various Government and Gaming Interests.

The Tribe seeks intervention because it believes the United States in fact has

not adequately represented its interests in this litigation. This case is at the same

time mature and undeveloped: it is nearly nine years along but the District Court

has effectively only heard the Government's motion to dismiss. The case could

have been disposed of years ago if the defendant had moved to dismiss (and the

court had granted dismissal) for failure to join the Tribe, whose interests are

obviously implicated. See Underlying Decision, JA 296. The Government has

pursued this case with regrettable emphasis on defending the Secretary's no-action

alternative (*see* Order on Motion to Dismiss, JA 74-84)—suggesting an interest in

litigating that particular issue. But this strategy has resulted in the abandonment of

the Tribe's interests in disposing of this suit. In this particular suit, for reasons that

it has not shared with the Tribe, the United States has put its national litigation or

policy concerns ahead of this Tribe's interests. The Government's failure to

employ Rule 19 is not simply a matter of litigation or strategic differences, given

that the case could have been entirely dismissed if the defendant had used Rule 19.

*See Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. Cal. 1992) ("In

assessing an absent party's necessity under Fed. R. Civ. P. 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed. R. Civ. P. 24(a). Consequently, we will consider three factors in determining whether existing parties adequately represent the interests of the absent tribes: whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect.") (internal citation omitted).

The Tribe also seeks intervention because of the United States' actions regarding this Tribe in particular in substantially similar and contemporaneous litigation. As the Court of Appeals for the Ninth Circuit explained in its January 29, 2014 decision affirming the lower court's dismissal on Rule 19 grounds in the substantially similar case of *Friends of Amador County v. Salazar*, No. 11-17996, 2014 U.S. App. LEXIS 1802 (9th Cir. January 29, 2014) (unpublished) (a case involving the same federal defendants, the same Compact amendment, the same challenge of validity to the Compact amendment,[7] and the same Tribe as the

---

[7] In both cases, the plaintiffs contend that the compact amendment is invalid as it authorizes the conduct of tribal gaming activities on lands (i.e., the Tribe's

immediate case), the United States' representation of this Indian tribe indicates

"divergent interests between the Tribe and the government." *Id.* at *5. There, after

the Tribe's special appearance and motion to dismiss for failure to join the Tribe,

the plaintiff/appellant (who attacked this same gaming compact amendment based

on the same grounds attacked here) argued that the United States could adequately

represent the Tribe. In affirming the dismissal, however, the Ninth Circuit

reasoned that:

> The district court concluded otherwise. The government's response to
> the district court's questions on this issue at a status conference
> caused the district court to suspect that the government favored
> judicial resolution of the lawsuit as opposed to early dismissal, and
> would seek to avoid taking positions contrary to its national Indian
> policy, even if contrary to the Tribe's interest. These concerns have
> been illustrated by the government's inaction to date. The government
> did not move for its own dismissal under Rule 19, and it has declined
> to take a position on the Tribe's Rule 19 motion in the district court
> and on appeal. Nor did the government appear at oral argument or file
> any brief in the appeal. These inactions indicate divergent interests
> between the Tribe and the government. We find no abuse of discretion
> in the district court's considered judgment.

*Id*. at *4-5.

The presence of the United States here does not adequately protect the

Tribe's multiple and fundamental interests. As the Tribe's trustee, the United

States has only a generic interest in defending the validity of the Compact

---

reservation, restored by stipulated judgment) that fail to qualify as "Indian lands"
under the Indian Gaming Regulatory Act.

Amendment or the status of the Rancheria.  Further, the United States does not face the same kind of harm as does the Tribe if the Court grants Plaintiff's requests.  If the Compact Amendment is invalidated, this Tribe may be prevented from exercising jurisdiction over its reservation and (as a form of such exercise) engaging in class III gaming on its Rancheria and will, among other things, lose its expected class III revenues.  No such harm will befall the United States.  The federal defendants appear not to desire the early dismissal of this case (yet it continues to use Rule 19 in other similarly situated tribal cases[8]) and apparently has a unique policy interest in using these Buena Vista Tribe cases to litigate certain IGRA issues raised by the Plaintiff here.  Whatever the government's interests, this case (as with the *Friends of Amador County* case) is not the proper forum to address those interests.  Using the instant litigation for the government's own purposes undermines (or at a minimum, certainly "may" undermine) its adequate representation of Tribe's substantial interests.

## V.     CONCLUSION

For the foregoing reasons, the district court's judgment denying the Tribe's request for intervention for the limited purpose of moving to dismiss pursuant to

---

[8] *See, e.g.*, *Timbisha Shoshone Tribe v. United States DOI*, 290 F.R.D. 589, 600 (E.D. Cal. 2013) (granting United States Defendants' motion to dismiss pursuant to Rule 19).

51

Rule 19 should be reversed and, on de novo review, the Tribe requests this Court

make the final determination that the Tribe may intervene for this limited purpose.

Respectfully submitted this 31st day of January 2014.

*s/Padraic I. McCoy*
PADRAIC I. MCCOY
Tilden McCoy + Dilweg LLP
2500 30th Street, Suite 207
Boulder, Colorado 80301
(303) 323-1922
pmccoy@tildenmccoy.com
(D.C. bar # 53307)

## CERTIFICATE OF COMPLIANCE
## WITH TYPE VOLUME LIMITATION

This brief complies with the type volume limitation set forth in Rule

32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure.  Excepting the potions

described in Circuit Rule 32(a)(1), this brief contains 12,226 words.


*s/Padraic I. McCoy*
PADRAIC I. MCCOY
Tilden McCoy + Dilweg LLP
2500 30th Street, Suite 207
Boulder, Colorado 80301
(303) 323-1922
pmccoy@tildenmccoy.com
(D.C. bar # 53307)

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

_s/Padraic I. McCoy_____
PADRAIC I. MCCOY
Tilden McCoy + Dilweg LLP
2500 30th Street, Suite 207
Boulder, Colorado 80301
(303) 323-1922
pmccoy@tildenmccoy.com
(D.C. bar # 53307)

54